UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Charles W. Rabette,                                       Case No. 5:14-cv-101

        Petitioner,

v.                                                     **MEMORANDUM AND ORDER**

Secretary, Department of Corrections, et al.

        Respondents.

---

      This matter is before the Court on a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. For the reasons that follow, the Petition is dismissed with prejudice.

**BACKGROUND**

      In January 2001, a jury in Lake County found Petitioner Charles W. Rabette guilty of attempted kidnapping while armed and possession of a weapon by a convicted felon. (See Pet. Ex. 1 (Docket No. 1–1) at 1.) He was sentenced to 30 years in prison as a prison release reoffender. (Id.) Rabette appealed his convictions, but the Fifth District Court of Appeal *per curiam* affirmed his convictions and sentence. See Rabette v. State, 804 So. 2d 1263 (Table) (Fla. Dist. Ct. App. 2002).

      This is not Rabette's first attempt at securing postconviction relief. A summary of Rabette's seven previous state postconviction and federal habeas petitions can be found in the order dismissing his January 27, 2010, federal habeas petition. (See Pet. Ex. 1 at 2-4.)

1

For the second time, Rabette now petitions for federal habeas relief under 28 U.S.C. § 2254, conceding that the previous court was "totally justified" in ruling that Rabette had failed to explain how his alleged mental incompetence prevented him from seeking timely federal relief. (Pet'r's Mem. (Docket No. 2) at 3.) Rabette asserts four grounds for relief[1] and requests (1) that the Court grant equitable tolling and (2) that the Court issue a stay and abeyance so he can exhaust his state-court remedies and be examined by court-appointed doctors. (Pet. (Docket No. 1) at 15.)

Respondent argues that Rabette's equitable tolling claim has already been rejected. (Ans. (Docket No. 6) at 2.) The State reiterates that Rabette has not demonstrated that he is entitled to equitable tolling due to his mental incompetence, requesting that the Court dismiss the Petition with prejudice and grant summary judgment in the State's favor. (Id. at 2-3.)

Rabette filed a reply brief, listing ten points to more fully explain the causal connection between his alleged mental retardation and his failure to file his Petition on time. (Reply Mem. (Docket No. 7) at 4-5.) He then restates his request for equitable tolling and for a stay and abeyance but adds an alternative request for relief—that the Court allow further factfinding and appointment of counsel to develop the record, as was afforded in Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009). (Id. at 5-7.)

---

[1] Rabette raises the following claims: 1) that the trial court failed to hold a competency hearing, even though it was aware of Rabette's mental retardation; 2) ineffective assistance of trial counsel for failure to investigate, depose, and present for testimony at trial the three doctors who examined Rabette for a guardianship appointment in 1994; 3) that the trial court denied Rabette his state-created right to be examined by a court-appointed expert for capacity to stand trial; and 4) ineffective assistance of trial counsel for failure to present Rabette's mental retardation as a mitigating circumstance. (Pet. at 5, 7, 8, 10; Pet'r's Mem. at 6-14.)

**DISCUSSION**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., a federal court's "review is greatly circumscribed and is highly deferential to the state courts." Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). Indeed, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002) (citation omitted). 28 U.S.C. § 2254, which applies to persons in custody pursuant to a state-court judgment, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, § 2254 states that "a determination of a factual issue made by a State court shall be presumed to be correct." Id. § 2254(e)(1). The petitioner must "rebut[] the presumption of correctness by clear and convincing evidence." Id.

**A.    Dismissal with Prejudice**

A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed. 28 U.S.C.

§ 2244(b)(1). In his previous federal habeas petition, Rabette claimed, as he does here, that he should be entitled to equitable tolling due to his mental incompetence. That petition was dismissed with prejudice, foreclosing Rabette's current Petition.

**B.     Equitable Tolling**

Even if Rabette's previous petition had not been dismissed with prejudice, this Court must first determine whether to grant equitable tolling before reaching the merits of his claims.

AEDPA states that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). "The time during which a properly filed application for State post-conviction . . . review" is "pending shall not be counted" against the 1-year period. 28 U.S.C. § 2244(d)(2). Both Rabette and the State agree that, unless equitably tolled, the statutory limitations period applicable to Rabette's Petition has expired.

The Supreme Court has held that "§ 2244(d) is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. Id. at 649.

Here, Rabette asserts that his mental retardation prevented him from timely filing for postconviction relief. The Eleventh Circuit has held that an allegation of mental incompetency, without a showing of a causal connection between the incompetence and the failure to file a timely application, does not justify equitable tolling. Lawrence v.

4

Florida, 421 F.3d 1221, 1226-27 (11th Cir. 2005).  In other words, "mental impairment is not a *per se* reason to toll a statute of limitations."  Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (citation omitted).  "Rather . . . the alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition."  Id.  Furthermore, "mere conclusory allegations are not sufficient to raise the issue."  San Martin v. McNeil, 633 F.3d 1257, 1267-68 (11th Cir. 2011).

In Hunter, the Eleventh Circuit determined that the inmate petitioner had submitted evidence sufficient to raise a factual issue as to whether a causal connection existed between his mental impairment and his ability to file a timely § 2254 petition. 587 F.3d at 1308.  Specifically, the petitioner submitted a medical competency report showing that:

> (1) [he] was diagnosed with chronic, irreversible mental retardation; (2) he has a full scale IQ score of 59, which is at the low-end of the mildly retarded range; (3) his IQ is lower than ninety-nine percent of the population; (4) his mental retardation moderately to severely impairs his judgment, insight and problem-solving skills, which makes him unable to function independently; (5) he is illiterate; and (6) he suffers from severe expressive speech aphasia which makes it difficult for him to communicate intelligibly.  In addition, although [the doctor] ultimately concluded . . . that Hunter was "borderline" competent to stand trial, [the doctor]'s opinion hinged on Hunter's prior experience with the criminal justice process and *the fact that Hunter would have access to an attorney who could adequately represent and educate him.*  Indeed, [the doctor] noted that ordinarily someone with Hunter's mental condition would not have sufficient understanding to be considered competent and that he only found Hunter competent because he was "court wise" *and would have access to adequate legal counsel*.

Id. at 1308-09 (emphases in original).

5

When filing his habeas petition, "Hunter did not have the benefit of the two factors that led [the doctor] to conclude Hunter was 'borderline' competent to go to trial despite a significant intellectual handicap that [the doctor] said '[n]ormally' would indicate an individual does not have sufficient understanding to be competent." Id. at 1309. "Hunter's well-documented, irreversible mental retardation is severe enough that Hunter, by himself, is not able to understand and comply with the AEDPA's filing requirements and deadlines. Further, [the doctor's] report suggests Hunter would have a very difficult time even assisting others in preparing his § 2244 habeas petition." Id.

Thus, although the evidence did not definitively establish the causal connection, the evidence was sufficient to preclude summary judgment, and the Eleventh Circuit remanded the matter to the district court for appointment of counsel, further investigation and factual development, and proceedings on the merits of the equitable tolling claim. Id.

This Court denied Rabette's previous federal habeas petition for failure to explain the causal connection between his alleged mental impairment and his inability to comply with the habeas filing requirements. Rabette attempts to address the causal connection in his reply brief here. (Reply Mem. at 4-5.) Of the ten points Rabette lists, few have evidentiary support other than Rabette's own assertions. Furthermore, Rabette's first six points follow the same order and use the same language as the competency report in Hunter:

> (1) Rabette was diagnosed . . . with chronic irreversible mental retardation and appointed a guardian for life . . . (2) [he] has a full scale IQ score of 49 . . . (3) [his] IQ score is lower than 99 percent of the U.S. population; (4) [his] mental retardation severely impairs his judgment, insight and problem solving skills which has been shown to make him

6

>unable to function independently; (5) [he] is totally illiterate . . . (6) [he] suffers from severe expressive speech aphasia which makes it difficult for him to communicate his needs intelligibly.

(Id. at 4.) Whether copied from the Hunter report or not, Rabette's claims are misleading and lack evidentiary support. According to Rabette's medical report, his diagnosis is "Organic Mental Disorder," not chronic irreversible mental retardation. (Pet. Ex. 2 at 8.) Rabette provides no evidence to support his assertions that he is "totally illiterate" and that he suffers from severe expressive speech aphasia.

Rabette further asserts that his past filings have been "totally managed by jail house lawyers (uncertified), who were basically preying on [Rabette] to gain canteen items." (Reply Mem. at 4.) Both this Court and the Eleventh Circuit have rejected this argument to justify equitable tolling. "Attorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for the purposes of equitable tolling; abandonment of the attorney-client relationship . . . is required." Cadet v. Fla. Dep't. of Corr., 742 F.3d 473, 481-82 (11th Cir. 2004). "Likewise, a prison law clerk's improper advice does not warrant equitable tolling." Hunter v. Sec'y, Fla. Dep't of Corr., No. 5:12-cv-369, 2015 WL 248754, *3 (M.D. Fl. Jan. 20, 2015); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (inadequacy of services of inmate law clerk who assisted drafting the habeas petition did not entitle petitioner to equitable tolling).

Next, Rabette asserts that because his IQ is ten points lower than Hunter's, he should receive the same favorable ruling. (Reply Mem. at 5-6.) The Eleventh Circuit rejected a similar low-IQ argument in Doe v. U.S., holding that the petitioner's allegation of a low IQ, without explaining how his low IQ prevented him from exercising due

diligence, did not satisfy the equitable tolling burden. 469 F.Appx. 798, 800-01 (11th Cir. 2012). As in <u>Doe</u>, Rabette does not explain how his low IQ prevented him from filing his habeas petition on time. Furthermore, Rabette provides no evidence to support his asserted IQ score. Therefore, his argument fails.

Next, Rabette claims that his mental retardation "severely impairs his judgment, insight and problem solving skills which has been shown to make him unable to function independently," borrowing the language from the doctor's report in <u>Hunter</u>. (Reply Mem. at 4.) As evidence of his impaired judgment, Rabette includes a copy of his 1994 medical examination, performed to evaluate whether he should be appointed a legal guardian. (Pet. Ex. 2 at 7-11.) The doctors identified numerous areas in which Rabette did and did not have the capacity to make an informed decision, concluding that a legal guardian should be appointed to assist Rabette in the designated areas of incapacity. (<u>Id.</u>) But nowhere in Rabette's attached doctor's report does the quoted <u>Hunter</u> language appear. (<u>Id.</u>)

Finally, Rabette asserts that he "is totally unable to manage any type of written legal affairs or understand legal rights and act upon them." (Reply Mem. at 4.) While Rabette's doctor's report offers some support for this claim, Rabette's interpretation of the report is not entirely accurate. Rabette's doctor's report indicates that he does not have the capacity to "make informed decisions regarding his or her right to sue, or assist in the defense of suits of any nature against him or her." (Pet. Ex. 2 at 9.) The report further specifies that Rabette lacks the capacity to initiate, defend, or settle lawsuits. (<u>Id.</u> at 10-11.) However, the report also indicates that Rabette has the capacity to make

8

informed decisions regarding "execution of a will or waiving the provisions of an existing will," as well as "admission to a Florida State Hospital or any other public treatment facility on a voluntary basis under the provisions of applicable state law," among others. (Id. at 8-10.) While Rabette's report identifies areas in which he lacks capacity, it does not support his contention that he is totally unable to understand his legal rights and act on them. Despite concluding that his case warrants the same treatment as given Hunter, Rabette does little work to compare his doctor's examination with Hunter's and instead lifts language from the Hunter examination and uses it as his own.

This Court is sympathetic to the difficulties inmates with cognitive impairments face in the legal system, but the record indicates that Rabette has successfully filed numerous pro se state postconviction, state habeas, and federal habeas petitions, among other correspondence with the courts. See Lake County Court Records for Case No. 35-2000-CF-115, Docket Nos. 137, 140, 143, 149, 151, 154, 156-57, 160-63, 172, 174, 176-78, 185, 187, 190-91, 195, 198, 200-03. Recently, this Court denied a petitioner's equitable tolling claim because, despite the petitioner's sixth-grade educational level, he was able to timely file and litigate a state post-conviction action. Hunter, 2015 WL 248754 at *3. Rabette's current assertion that his mental condition prevents him from ever understanding the requirements of filing a timely petition is unpersuasive.

It appears that Rabette has attempted, with little evidentiary support, to shoehorn the facts of his case into the facts in Hunter. In doing so, Rabette does little more than restate the facts of his mental incapacity and conclude that he can never fully understand filing requirements. This is insufficient to establish a causal connection and thus warrant

9

equitable tolling under Lawrence. Although the State, as in Hunter, has not offered any evidence in response to Rabette's claim that he is unable to understand the filing requirements, the record speaks for itself. Therefore, Rabette's Petition is untimely.

**C.     Exhaustion of Remedies**

Even if Rabette's current Petition were timely, Section 2254 requires a person in state custody to exhaust his remedies in state court before seeking relief in federal court. 28 U.S.C. § 2254(b)(1)(A); see also Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "The exhaustion requirement is satisfied when the petitioner properly raised the issue in state court, even if the court did not rule on it." Martin v. Sec'y, Dep't of Corr., 262 F. App'x 990, 992 (11th Cir. 2008) (citation omitted). "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine. If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default [that] will bar federal habeas relief." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).

The exhaustion requirement requires "a state prisoner to present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 404 U.S. 270, 276 (1971). Thus, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee . . . ." Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "[T]he same claim must be brought before both the state and federal courts and presented in such a way 'that a reasonable reader

10

would understand [the] claim's particular legal basis and specific factual foundation.'" Ramos v. Sec'y, Fla. Dep't of Corr., 441 F. App'x 689, 696 (11th Cir. 2011) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)). To fairly present the federal issue to the state courts, the habeas petitioner must have cited a federal source of law in conjunction with his state claim, or cited a case deciding a similar claim on federal grounds, or labeled his claim as a federal claim. Id. (citing Baldwin v. Reese, 541 U.S. 27, 32 (2004)).

Rabette concedes that he has not exhausted his state-court remedies regarding his claims. Review of the record indicates that Rabette has previously raised his first claim in state postconviction and habeas petitions, but not his remaining claims. Accordingly, Rabette's second, third, and fourth claims must be dismissed.

**D.  Rabette's Claims**

Even if this Court granted Rabette's request for equitable tolling and he appropriately exhausted his state-court remedies, Rabette's claims fail on their merits.

**1.  "Mental Retardation" and Denial of a State-Created Right**

Rabette's first and third claims both assert that the trial court failed to follow the Florida Rules of Criminal Procedure and Florida Statutes regarding mentally retarded defendants. (Pet. at 4, 8; Pet'r's Mem. at 6-7, 10-12); see Fla. R. Crim. P. 3.210(b), Fla. Stat. §§ 916.11(1)(d)[2], 393.063. Rabette claims that the Florida court was aware of his mental condition but elected not to sua sponte order a pretrial competency examination,

---

[2] The current section, and the section in use at the time of Rabette's trial, is Fla. Stat § 916.301(2).

11

violating Rabette's rights. Id. Because these claims are rooted in a mistaken application of Florida, not federal, law, they are not cognizable under AEDPA.

Rabette's claims also fail in light of the fact that on May 1, 2000, Rabette's attorney moved to appoint a confidential expert for a psychiatric and psychological examination. See Lake County Court Records for Case No. 35-2000-CF-115, Docket No. 90. Two days later, the trial court granted the motion and appointed a confidential expert. Id. at Docket No. 91.

Therefore, Rabette's first and third claims are meritless and must be denied.

### 2. Ineffective Assistance of Counsel

"Ineffective assistance of counsel can be grounds for challenging a conviction if counsel's performance was so egregious that it rendered the trial fundamentally unfair." Damron v. Florida, No. 8:07-cv-2287, 2009 WL 1514269, at *2 (M.D. Fla. May 29, 2009) (citing Strickland v. Washington, 466 U.S. 668, 701 (1984)). Rabette bears the burden to prove "that his counsel's performance was objectively unreasonable by professional standards and that he was prejudiced as a result of the poor performance." Id. (citing Strickland, 466 U.S. at 687-88). To show prejudice, Rabette "must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (quotations omitted). Moreover, "[t]here is a strong presumption that an attorney's conduct fell within the 'wide range of professional norms,' and anything that 'might be considered sound trial strategy' will generally not prove counsel ineffective." Damron, 2009 WL 1514269, at *2 (quoting Strickland, 466 U.S. at 689).

### a. Failure to Investigate, Prepare, and Call Doctors to Testify

Rabette first claims that his counsel was ineffective by failing to call as witnesses the three doctors who performed Rabette's 1994 guardianship examination. Had his attorney called the three doctors to testify, according to Rabette, "no conviction would have resulted." (Pet. at 7.) Rabette asserts that the doctors' testimony would serve as evidence that he was incapable of understanding the charges against him. (Pet'r's Mem. at 9.)

Rabette's arguments on this point are less than clear. If Rabette's argument is that his mental retardation prevented him from forming the requisite intent to commit the crime, Florida does not recognize diminished capacity as a defense. See Chestnut v. State, 538 So. 2d 820 (Fla. 1989) (disallowing diminished capacity as a defense and holding that evidence of an abnormal mental condition not constituting legal insanity is inadmissible to prove that a defendant could not have formed the specific intent needed to be held responsible for committing a crime). If Rabette's argument is that his mental retardation prevented him from understanding the charges against him and made him incapable of standing trial, the 1994 report makes no mention of Rabette's ability to understand criminal charges, and testimony from three doctors whose examinations were done in 1994 would be of little value, if any, to prove Rabette's capacity to stand trial in 2001.

Additionally, the record indicates that Rabette's attorney moved for and received appointment of a confidential expert to perform a psychological examination pursuant to Fla. R. Crim. P. 3.216(a). The trial court ordered the expert to report his findings "only

13

to the attorney for [Rabette], and all matters related to this expert are deemed to fall under the lawyer-client privilege." Rabette's attorney was informed by an expert about Rabette's present psychological state, making the 1994 doctors' testimony even less relevant.

As the doctors' testimony would likely serve no purpose in Rabette's trial, it was reasonable for his attorney not to call them as witnesses. Therefore, Rabette's first claim of ineffective assistance fails.

### b. Failure to Use Mental Retardation as a Mitigating Circumstance

Second, Rabette claims that he would have been sentenced to civil commitment instead of 30 years in prison, had his attorney given notice of intent to present mental issues before trial. (Pet. at 10.) According to Rabette, because his attorney did not give notice before trial that he intended to present evidence of Rabette's mental health, Fla. R. Crim. P. 3.216(b) prevented the trial court from considering any such evidence at sentencing. (Id.) Specifically, Rabette asserts that the court was prevented from considering a letter to the court from his step-father that detailed Rabette's mental history and included the 1994 examination report. (Pet'r's Mem. at 12-13.) Rabette cites no authority for his conclusions about the impact his attorney's alleged failures would have had on his sentence.

"The Supreme Court and [the Eleventh Circuit] in a number of cases have held counsel's performance to be constitutionally sufficient when no mitigating circumstance evidence at all was introduced, even though such evidence, including some relating to the defendant's mental illness or impairment, was available." Waters v. Thomas, 46 F.3d

14

1506, 1511 (11th Cir. 1995) (citing cases).  "[The Eleventh Circuit]'s decisions are inconsistent with any notion that counsel must present all available mitigating circumstance evidence, or all available mental illness or impairment evidence, in order to render effective assistance of counsel at the sentence stage."  <u>Id.</u>; <u>see also</u> <u>Stevens v. Zant</u>, 968 F.2d 1076, 1082 (11th Cir. 1992) ("Trial counsel's failure to present mitigating evidence is not per se ineffective assistance of counsel.").

Rabette's claim fails to satisfy either of the <u>Strickland</u> prongs.  First, his attorney moved for and the court appointed a confidential expert pursuant to Fla. R. Crim. P. 3.216(a), not 3.216(b).  Rabette misunderstands the reach of Rule 3.216(b).  Rule 3.216(b) applies only when a criminal defendant intends to present an insanity defense, and prevents that defendant from presenting any evidence related to establishing that insanity defense unless proper notice is given.  Because Rabette was not relying on an insanity defense, his attorney did not have to give any notice about presenting mental health evidence.  Thus, Rabette's attorney's performance was not deficient.

Second, regardless of any procedural failure on the part of Rabette's attorney, the trial judge received and reviewed Rabette's step-father's letter before sentencing.  The record indicates that the letter from Rabette's step-father was sent to the judge and filed with the court.  <u>See</u> Lake County Court Records for Case No. 35-2000-CF-115, Docket No. 93.  At sentencing, the trial judge acknowledged that he had read the letter.  Even if Rabette had shown that his attorney's performance was deficient in any way, there was no resulting prejudice.  Therefore, Rabette's second ineffective assistance claim is without merit and must be denied.

15

**E.      Certificate of Appealability**

Rabette is required to secure a Certificate of Appealability before appealing the dismissal of his habeas corpus action. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). This Court cannot grant a Certificate of Appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). The prisoner must establish that the resolution of his constitutional claims "was debatable among jurists of reason." Lott v. Att'y Gen., Fla., 594 F.3d 1296, 1301 (11th Cir. 2010).

Rabette has not demonstrated that his claims are debatable or that they "deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. The Court will therefore not grant a Certificate of Appealability on any of Rabette's claims.

**CONCLUSION**

Rabette's previous federal petition was dismissed with prejudice on the equitable tolling issue. Rabette has not established that his mental condition has prevented him from timely filing his current Petition. Thus, he is not entitled to equitable tolling, and his Petition is untimely. Furthermore, Rabette concedes that he has not exhausted his state-court remedies for most of his claims. As such, this Court is without jurisdiction to consider them. And regardless, Rabette's asserted violations of Florida law are not cognizable under AEDPA, and his ineffective assistance claims are meritless. Accordingly, **IT IS HEREBY ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Docket No. 1) is **DISMISSED WITH PREJUDICE**;
2. A Certificate of Appealability will **NOT** issue; and
3. The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.

Dated:  November 2, 2015

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge